UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | |
|---|---|
| MAHLON DWAYNE THOMAS, ) | |
| ) | |
| Plaintiff, ) | Civil No. 12-157-ART |
| ) | |
| v. ) | |
| ) | **ORDER** |
| CAROLYN W. COLVIN, ) | |
| *Acting Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Commissioner of Social Security denied Mahlon Dwayne Thomas's application for disability insurance benefits and supplemental security income. Thomas now seeks judicial review of that decision. *See* 42 U.S.C. § 405(g). Because of an ambiguity in the Administrative Law Judge's (ALJ) decision, it is not clear whether substantial evidence supports the ALJ's finding that Thomas can perform jobs that exist in the local and national economy. So, the Court will remand the case back to the ALJ for specific findings consistent with this order.

## BACKGROUND

Mahlon Thomas raised three boys as a single father, and he and his wife are now raising his stepson and daughter. *See* R. 6-3 at 300, 303 (Tr. at 891, 894); R. 6-4 at 172 (Tr. at 168). Thomas is not afraid of hard work. He began working at age twelve, and has held a series of jobs, ranging from truck loader, to pipe fitter, to stocking shelves. R. 6-4 at 165, 172 (Tr. at 161, 168). He kept working until, at age forty-three, doing so became too painful.

*See id.* at 17 (Tr. at 15). Thomas's degenerating lower back and knees make it hard for him to stand or walk for long periods of time. *See id.* at 18 (Tr. at 16).

After he stopped working, Thomas applied for disability insurance benefits and supplemental security income. R. 6-3 at 246–251 (Tr. at 827–42). His application was denied both initially and again by Administrative Law Judge (ALJ) Timothy Keller after a hearing. R. 6-4 at 44–51 (Tr. at 42–49). Thomas appealed that decision. While his appeal was pending, Thomas filed a second application for disability insurance benefits and supplemental security income. *Id.* at 101–02, 108–15 (Tr. at 98–99, 105–12). The Appeals Counsel granted his appeal and remanded the case. *Id.* at 34–36 (Tr. at 32–34). On remand, Administrative Law Judge (ALJ) Roger J. Reynolds consolidated and denied Thomas's two applications. *Id.* at 44–51 (Tr. at 42–49). The Appeals Council declined review. *Id.* at 7–9 (Tr. at 5–7). At that point, the denial became the final decision of the Commissioner, and Thomas appealed. R. 1.

## THE ALJ'S DECISION

ALJ Reynolds applied the traditional five-step analysis for Social Security decisions, *see Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010); 20 C.F.R. § 404.1520, and found as follows. First, Thomas had not performed substantial gainful activity since February 15, 2004, the alleged date he became disabled. R. 6-4 at 17 (Tr. at 15). Second, Thomas had "low back pain secondary to degenerative disc disease of the thoracic and lumbar spine; history of cardiomyopathy; osteoarthritis and degenerative joint disease of the bilateral knees; obesity; depressive disorder, not otherwise specified; history of alcohol abuse, allegedly in remission," which qualified as severe impairments. *Id.* at 18 (Tr. at 16). Third, none of Thomas's impairments qualified as one of the disabilities listed in 20 C.F.R.

Pt. 404, Subpt. B, App'x 1. *Id.* at 18–21 (Tr. at 16–19). Fourth, Thomas could perform light and sedentary work that did not require him to carry more than 20 pounds occasionally and ten pounds frequently. Thomas could sit, stand, or walk for a total of six hours in an eight-hour workday. But he needed to be able to switch between sitting and standing and he could not stand or walk for more than forty-five minutes at a time. *Id.* at 21 (Tr. at 19) ("[T]he claimant . . . sit, stand and walk for up to six hours each in an eight hour day. He requires a sit/stand option with no prolonged standing or walking in excess of 45 minutes without interruption."). Any job had to be entry level and could not involve frequent changes in routine, complex problem solving or planning, or more than occasional contact with the general public. *Id.* at 21 (Tr. at 19). Fifth and finally, Thomas could perform jobs that were available in the state and national economy, such as simple bench work, packaging and sorting work, and weighing, measuring, and inspection work. *Id.* at 26 (Tr. at 24).

## DISCUSSION

This Court reviews an ALJ's decision to determine whether substantial evidence supports the ALJ's conclusions. Substantial evidence is proof that "a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted). An ALJ decision supported by substantial evidence will be upheld "even if substantial evidence would support the opposite conclusion." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)).

Thomas argues that the ALJ decision must be reversed for three reasons. First, the ALJ violated the "treating physician rule." Second, the ALJ's residual functional capacity determination was not supported by substantial evidence. Third, the ALJ did not accurately

3

describe Thomas's limitations when questioning the vocational expert. The first two are unpersuasive, but the third requires a remand to the ALJ to address an ambiguity in the ALJ's decision.

## I.     The ALJ Did Not Violate the Treating Physician Rule.

Thomas argues that the ALJ violated the "treating physician rule" by discounting or ignoring the statements of two of his treating physicians. Those statements were legal opinions that the ALJ was not required to follow.

Under the treating physician rule, an ALJ must give a treating physician's opinion about an applicant's impairments controlling weight if that opinion is "well-supported by medically acceptable . . . techniques and [consistent] with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2). If an ALJ does not give a treating physician's opinion controlling weight he must explain why and also explain what, if any, weight the opinion does deserve. *See id.*; *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Thomas argues that the ALJ violated the treating physician rule when he rejected Dr. Grosser's opinion that Thomas was disabled and entitled to benefits. *See* R. 8 at 6. Dr. Timothy Grosser submitted a one-sentence letter asking the ALJ to "consider [Thomas] for disability on the basis of [his back and knee degeneration]." R. 6-3 at 245 (Tr. at 836). The treating physician rule requires an ALJ to give controlling weight to only the *medical opinions* of a treating physician. The ALJ did that. The ALJ took the back and knee degeneration mentioned in Dr. Grosser's letter into account when determining Thomas's residual functional capacity. *See* R. 6-4 at 24 (Tr. at 22) (finding that Thomas needed a job that allowed him to switch between sitting and standing and did not require him to stand or walk for extended periods of time). The ALJ did "discount[]" Dr. Grosser's implication that

4

Thomas was entitled to disability benefits.  *See* R. 6-4 at 24 (Tr. at 22).  But the regulations that set out the treating physician rule specifically state that a physician's conclusion that an applicant is disabled is "not give[n] any special significance."  20 C.F.R. § 404.1527(d).  That decision is "reserved to the Commissioner."  *Id.*; *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.").  Dr. Grosser's legal conclusion about disability is not a medical opinion that is entitled to deference, so the ALJ did not violate the treating physician rule when he discounted that opinion.

Thomas also argues that the ALJ violated the treating physician rule when he failed to credit Dr. Greg Wheeler's conclusion that Thomas was disabled in 2010.  *See* R. 8 at 15. Dr. Wheeler does not appear to be a treating physician because there is evidence of only one examination by Dr. Wheeler in the record.  *See* R. 6-3 at 211–12 (Tr. at 802–03).  But in any case, Dr. Wheeler's statement that Thomas "is currently disabled at this time" is a legal conclusion, not a medical opinion.  *See id.* at 211 (Tr. at 802).  The ALJ's failure to mention the statement did not violate the treating physician rule because the ALJ was not required to give the statement "any special significance."  20 C.F.R. § 404.1527(d); *see also Warner*, 375 F.3d at 390.

Thomas has not shown that the ALJ violated the treating physician rule, so a remand on that basis is not warranted.

## II.  Substantial Evidence Supports the ALJ's Residual Functional Capacity Determination.

The ALJ found that Thomas could perform "light and sedentary work."  R. 6-4 at 21 (Tr. at 19).  Light work requires the ability to lift up to a maximum of twenty pounds and the

5

ability to lift up to ten pounds frequently. 20 C.F.R. § 404.1567(b). Light work can involve either "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm and leg controls." *Id.* Sedentary work requires less lifting and walking than light work, so someone who can do light work can generally also do sedentary work. *Id.* at § 404.1567(a)-(b). The ALJ also found that the type of light and sedentary work Thomas could do was limited. Specifically, the ALJ found that Thomas could "sit, stand, and walk for up to six hours each in an eight hour day" as long as the job allowed him a "sit/stand option with no prolonged standing or walking in excess of 45 minutes without interruption." R. 6-4 at 21 (Tr. at 19).

Thomas argues that the ALJ's findings were not supported by substantial evidence because they are internally inconsistent, but there is no inconsistency. *See* R. 8 at 6–8. The ALJ found that Thomas could perform a job that required him to sit, stand, or walk for up to six hours in an eight-hour workday. Thomas could do so only if he could *also* alternate between sitting and standing and avoid walking or standing for more than forty-five minutes straight. In other words, the ALJ first narrowed down the set of jobs that Thomas could perform to light and sedentary work. He then further narrowed that set by adding additional limitations: the sit/stand option and the forty-five minute limitation. There is nothing inconsistent about those two findings.

Thomas points to *Moeller v. Commissioner of Social Security*, 489 F. App'x 868 (6th Cir. 2012), but that case does not help him. In *Moeller*, an evaluating physician's opinion said the claimant's ability to sit was restricted and there was no contrary evidence in the record. *See id.* at 870. Yet, the ALJ found that the claimant could sit for six hours a day. The Sixth Circuit held that the ALJ's decision was not supported by substantial evidence.

6

*See id.* Thomas claims that *Moeller* stands for the proposition that someone who can stand for six hours a day can never also be unable to stand for an extended period. *See* R. 8 at 7. That is an inaccurate description of the case. *Moeller* stands only for the obvious proposition that an ALJ cannot issue a finding that is clearly contrary to the relevant evidence in the record—nothing more. So, *Moeller* does not help Thomas.

Thomas also argues that the ALJ should have found that Thomas could perform only unskilled, sedentary work, rather than light and sedentary work with certain limitations. *See* R. 8 at 7. He makes this argument by simply listing various diagnoses, ailments, and test results. *See id.* The ALJ's opinion recognized and took into account all of Thomas's medical conditions. *See* R. 6-4 at 22–24 (Tr. at 20–22) (discussing Thomas's back pain, knee pain, sleep apnea, obesity, chest pain, and heart condition). Thomas disagrees with the ALJ's findings, but he bears the burden of at least explaining why the ALJ should have come to a different conclusion. *Cf. Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (noting that the claimant bears the burden at steps one through four). His cursory argument on appeal does not meet that burden.

### III. The ALJ's Finding That Thomas Could Perform Work in the National Economy Was Not Supported by Substantial Evidence.

Thomas points out that when an ALJ finds that a claimant requires a sit/stand option, that finding "must be specific as to the frequency of the individual's need to alternate sitting and standing." Soc. Sec. Ruling 96–9, 1996 WL 374185, at *7 (July 2, 1996). The ALJ arguably did not comply with that requirement. *See* R. 8 at 6. The ALJ found that Thomas "requires a sit stand option with no prolonged standing or walking in excess of 45 minutes." *See* R. 6-4 at 21 (Tr. at 19). There are two ways to interpret that finding, depending on what

the phrase "in excess of 45 minutes" modifies. First, Thomas must be able to switch between sitting and standing every forty-five minutes. Second, Thomas must be able to switch between sitting and standing at some frequency *and* also cannot walk or stand for more than forty-five minutes at a time. If the ALJ's finding was the first interpretation, then he complied with the requirement to specify a frequency. If the ALJ's finding was the second interpretation, then he did not.

The ambiguity matters because the ALJ used the same ambiguous language when questioning the Vocational Expert. And that questioning led to the ALJ's finding that jobs were available in the national economy which Thomas could perform. R. 6-4 at 26 (Tr. at 24). Specifically, the ALJ asked what jobs were available to someone who could "stand[]or walk[] up to six hours in an eight hours day but with a sit and stand option, no prolonged standing or walking in excess of 45 minutes to an hour without interruption . . . ." R. 6-3 at 321 (Tr. at 911). The vocational expert responded that such a person could perform simple bench work, packaging and sorting work, and weighing, measuring, and inspection work. *See* R. 6-3 at 323–24 (Tr. at 913–14). The vocational expert then reduced the total available number of those jobs "d[ue] to the need for the sit/stand option at a 45 minute to hour interval." *Id.* at 322–23 (Tr. at 912–13). Based on the vocational expert's testimony, the ALJ found that Thomas was not disabled because he could perform jobs that were available. *See* R. 6-4 at 26 (Tr. at 24).

The vocational expert's responses make clear that the vocational expert based his answers on the first interpretation of the ALJ's residual functional capacity finding—that Thomas needed to switch between sitting and standing every forty-five minutes. But Thomas's actual limitation may be the second interpretation: He may need the ability to

8

switch between sitting and standing at will *and* to not stand or walk for more than forty-five minutes. So the ALJ's question may not have accurately portrayed Thomas's limitations, and the vocational expert's testimony may not support the ALJ's findings.

This potential error is not a harmless one. The testimony of a vocational expert counts as substantial evidence in support of the ALJ's findings only if the ALJ's question "accurately portray[ed Thomas's] physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). A claimant who must be able to switch between sitting and standing at will and who cannot stand or walk for more than forty-five minutes is more limited than one who only must be able to switch between sitting and standing every forty-five minutes. As a claimant's limitations increase, the number of jobs available to that claimant decreases. The vocational expert testified about the number of jobs available to a hypothetical claimant who needed the ability to switch between sitting and standing every forty-five minutes. If Thomas requires the ability to switch between sitting and standing at some other frequency and also cannot walk or stand for more than forty-five minutes, then the testimony potentially overestimated the number of available jobs. *Cf. Tomrell v. Comm'r of Soc. Sec.*, No. 10-14657, 2012 WL 959358, at *2 (E.D. Mich. Mar. 20, 2012) (holding that the ALJ's failure to specify that the claimant required the option to sit/stand at will was harmless where, at worst, the vocational expert overestimated the number of jobs available to the claimant). For that reason, the testimony might not provide substantial evidence for the ALJ's finding that Thomas could perform jobs that were available in the national economy.

Thus, the case must be remanded back to the ALJ. On remand, the ALJ must state clearly what his residual functional capacity finding was. If the ALJ's residual functional

9

capacity finding was that Thomas needs to be able to switch between sitting and standing every forty-five minutes, then the ALJ's decision was based on substantial evidence. If the ALJ's residual functional capacity finding was that Thomas needs to be able to switch between sitting and standing and also cannot walk or stand for more than forty-five minutes at a time, the ALJ's decision was not based on substantial evidence. In that case, the ALJ must do two things. First, the ALJ must specify a frequency for the sit/stand option. Second, the ALJ must re-question the vocational expert to determine whether jobs exist in the economy for someone with Thomas's limitations.

## CONCLUSION

Accordingly, it is **ORDERED** that:

(1) The plaintiff's motion for summary judgment, R. 8, is **DENIED**.

(2) The defendant's motion for summary judgment, R. 11, is **DENIED**.

(3) Pursuant to 42 U.S.C. § 405(g), this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this Memorandum Opinion and Order.

This the 13th day of May, 2013.



Signed By:
*Amul R. Thapar* AT
United States District Judge